IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

HARD DRIVE
PRODUCTIONS, INC

Plaintiff, vs.

DOES 1-188, Defendants.

_____/

CASE No. C-11-01566 JCS

MOTION TO QUASH OR MODIFY SUBPOENA

## MOTION TO QUASH OR MODIFY SUBPOENA

I received a letter from my ISP regarding a subpoena, which included a copy of the original complaint.

From accounts of previous defendants of Steele Hansmeier, these subpoena notifications are followed by demand letters. These letters -- which demand around $2900 to avoid dealing with their lawsuit -- and their phone calls, which are persistent, are the reason I am filing this motion, and for this reason, I respectfully request that I be allowed to do so without revealing my personally identifying information. Please find attached Exhibit A documenting my receipt of a letter from my ISP and Exhibit B a news article outlining Plaintiff's persistent demands of previous defendants.

### INTRODUCTION

To cut court costs while suing as many individuals as possible, Plaintiff's counsel, Steele Hansmeier is using improper joinders in their mass lawsuits alleging copyright infringement through BitTorrent. These lawsuits include over twenty-thousand defendants in

1

the Northern District of Calfornia alone. Steele Hansmeier (Formerly Steele Law Firm, LLC)

also has mass lawsuits in Illinois, including a BitTorrent case nearly identical to this one, *CP*

*Productions, Inc. v. Does 1-300 case 1:2010cv06255,* and in this case the court notes before

dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something
> that this court will assume to be the case, given the Complaint's allegations that so
> state), each of those infringements was separate and apart from the others. No
> predicate has been shown for thus combining 300 separate actions on the cheap —
> if CP had sued the 300 claimed infringers separately for their discrete
> infringements, the filing fees alone would have aggregated $105,000 rather than
> $350.

Later, Judge Milton Shadur writes about Steele Hansmeier's abuse of the litigation system "in

more than one way" with its "ill-considered" lawsuit:

> This Court has received still another motion by a "Doe" defendant to quash a
> subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP")
> against no fewer than 300 unidentified "Doe" defendants – this one seeking the
> nullification of a February 11, 2011 subpoena issued to Comcast
> Communications, LLC. This Court's February 24, 2011 memorandum opinion and
> order has already sounded the death knell for this action, which has abused the
> litigation system in more than one way. But because the aggrieved Doe defendants
> continue to come out of the woodwork with motions to quash, indicating an
> unawareness of this Court's dismissal of this action, 1 CP's counsel is ordered to
> appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss
> what steps should be taken to apprise all of the targeted "Doe" defendants that
> they will not be subject to any further trouble or expense as a result of this ill-
> fated (as well as ill-considered) lawsuit.

*CP Productions, Inc. v. Does 1-300 case 1:2010cv06255 (dismissed ALL John Doe defendants)*

In the Northern District of California, these BitTorrent cases which are nearly

identical to the case at hand have also been severed for improper joinder:

> *Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed*
> *Does 2-2099)*
> *New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)*

And these nearly identical BitTorrent cases in the Northern District of California

by the plaintiff Boy Racer (represented by Steel Hansmeier) have also been severed for

improper joinder:

> *Boy Racer, Inc v. Does 1-52 case 5:2011cv02329 (severed Does 2-52)*
> *Boy Racer, Inc v. Does 1-71 case 5:2011cv01958 (severed Does 2-72)*

## ARGUMENT

1)      Plaintiff Has Improperly Joined 188 Individual Defendants Based on Entirely Disparate

Alleged Acts.

The Plaintiff's joinder of 188 defendants in this single action is improper and runs the

tremendous risk of creating unfairness and denying individual justice to those sued. Mass

joinder of individuals has been disapproved by federal courts in both the RIAA cases and

elsewhere. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access
> was abused by her minor child, while John Doe 2 might share a computer with a
> roommate who infringed Plaintiffs' works. John Does 3 through 203 could be
> thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and
> depriving them, and their artists, of the royalties they are rightly owed. . . .
> Wholesale litigation of these claims is inappropriate, at least with respect to a vast
> majority (if not all) of Defendants.

*BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)*
(severing lawsuit involving 203 defendants).

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against

them must arise from a single transaction or a series of closely related transactions.

Specifically:

Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted

3

against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20. Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met:

(1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; **and** (3) there must be a common question of fact or law common to all the defendants. *Id.*

Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country. In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way. The court explained: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. See also *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP

4

and P2P network to conduct copyright infringement); *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY); and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Plaintiff may argue that, unlike the RIAA cases, its allegations here are based upon use of the Internet to infringe a single work. While that accurately describes the facts alleged in this case, it does not change the legal analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

Nor does the analysis change because the BitTorrent protocol works by taking small fragments of a work from multiple people in order to assemble a copy. The individual

Defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no allegation that any copy of the work they downloaded came jointly from any of the Doe defendants. Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established     joinder     principles     need     not     be     followed     here.

Because this improper joining of these Doe defendants into this one lawsuit raises serious questions of individual fairness and individual justice, the Court should sever the defendants and "drop" Does 2-188, from the case.

*See* Fed. R. Civ. P. 21.

Respectfully submitted,

*s/John Doe*
John Doe
*Pro se*

Dated: 6/27/2011

6

## CERTIFICATE OF SERVICE

I hereby certify that on 6/27/2011, I served a copy of the foregoing document, via US Mail, on:

Brett L. Gibbs, Esq.
Steele Hansmeier PLLC.
38 Miller Avenue #263
Mill Valley, CA 94941

**comcast.**

NE&TO
650 Centerton Road
Moorestown, NJ 08057
866-947-8572 Tel
866-947-5587 Fax

Exhibit A

May 26, 2011

***Personal and Confidential***

***Via UPS Delivery***



CA

Re: *Hard Drive Productions, Inc. v. Does 1-188*
United States District Court for the Northern District of California
Docket No.: C 11-01566 JCS
Order Entered: May 6, 2011
Comcast File #:

Dear

     Hard Drive Productions, Inc. has filed a lawsuit in the United States District Court for the Northern District of California. You have been identified via your assigned Internet Protocol address in this lawsuit for allegedly infringing Hard Drive Productions, Inc.'s copyrights on the Internet by uploading and/or downloading a movie using a computer assigned the Internet Protocol address       The Court has ordered Comcast to supply your name, address and other information to Hard Drive Productions, Inc. in the lawsuit referenced above and in the accompanying Subpoena, which is attached. Your case has been assigned Docket Number C 11-01566 JCS by the Court. If you have any questions about the lawsuit, you should consult an attorney immediately. Comcast cannot and will not provide any legal advice.

     Comcast will provide your name, address and other information as directed in the Order unless you or your attorney file a motion to quash or vacate the Subpoena no later than June 27, 2011. If you make this filing, you must notify Comcast in writing with a copy of the filing by sending it via fax to **(866) 947-5587** no later than June 27, 2011. If you do not file a motion to quash or vacate the Subpoena by this date, or if you fail to notify Comcast of your filing by this date, Comcast will provide your name, address and other information as directed in the Order to the Plaintiff.

     If you have any questions, you may contact us at **(866) 947-8572**.

                           Sincerely yours,

                           Comcast Legal Response Center

Attachments:    Copy of Court Order and accompanying Subpoena regarding civil action

Case3:11-cv-01566-JCS   Document21   Filed06/28/11   Page9 of 10

Exibit B

# Settle up: voicemails show P2P porn law firms in action

By <u>Nate Anderson</u> | Published 2 months ago

The pitch isn't subtle. Lawyers behind the recent wave of mass file-sharing lawsuits in the US want to earn quick settlements from defendants rather than litigate years-long cases, so it's no surprise that their settlement efforts are persistent. Settlement amounts are set at a few thousand dollars—enough to hurt but less than it would cost even to get a lawyer started on defending someone. In addition to the money, there's the time—years of one's life tied up in a court case—and the fact that most of these cases involve "adult content."

The lawyers know all of this, and their settlement folks make all these points explicit while attempting extract cash from defendants. One such defendant, targeted in a mass file-sharing porn case in Illinois, provided us with a snapshot of what it's like to be on the receiving end of these settlement attempts.

The defendant doesn't live in Illinois, but starting a few months ago, he began receiving phone calls from someone in the Steele Hansmeier law offices. (<u>John Steele</u>, based in Chicago, has filed all of the current mass file-sharing lawsuits in the state; numerous judges are <u>displeased</u> by his <u>tactics</u>.) The calls have continued almost every business day since; the defendant doesn't answer them any more, which means that he has ended up with a lengthy collection of voice mails, some of which he shared with us.

Early in the series of calls, the settlement agent suggests that a "settlement date" is approaching, trying to create a sense of urgency. But the date passes, then weeks pass, and still the calls continue. The script is generally the same, but with small variations each time. The themes are clear: a court case is expensive, it will take two years of your life, and "adult content" is involved.

"Our client is preparing to move forward with federal litigation, which is far more costly," says the caller in one message. In another, he notes that "being named in a federal suit involving adult content is going to cost you far more… If you want to avoid that, we need to have a conversation."

A selection of clips from a few of the voice mails are included below, with identifying information such as names, dates, and phone numbers removed.


http://arst.ch/p3q

A selection of voicemails offering to settle the case

After several weeks, the script changes a bit. "Our client has put a note next to your IP address, which means it's in line to be removed from the current case," says the caller, "and at that point we'll name you individually in another one, where you'll be served and have to retain counsel for a federal case and go to court for, uh, maybe a year and a half, two years. If you'd like to avoid all that, give us a call."

Steele Hansmeier wants $2,900 to settle the case.

Did the defendant do it? That remains unclear. "I don't have that kind of money nor do I feel I have to pay because the file he mentioned honestly does not look recognizable nor ring any bells," he tells Ars.

For groups like the Electronic Frontier Foundation, however, the real issue here is process. "Because the settlement amount is less than the cost of even a pro forma defense, and the downside risk of litigation is so great under copyright's lopsided damages scheme, the pressure to settle rather than raise legitimate defenses is high," writes <u>Cindy Cohn</u>, EFF Legal Director.

"For those accused of infringing pornographic movies, many with gay themes, the prospect of being publicly named in a lawsuit is a further reason to settle quickly. Thus, a court's decision granting leave to issue discovery often gives the plaintiffs in these cases the only remedy they really want: the ability to demand settlements from the Doe defendants."

## Getting results

Despite resistance from some defendants, many people do settle. Someone familiar with the Illinois file-sharing cases tells Ars that he has serious doubts about the tech being used by Steele to identify infringers, but he does say that "these cases are remarkably effective in motivating people to settle."

One can get a sense of how many settlements are being racked up by looking through Steele's various court dockets. Occasionally, he will voluntarily dismiss a batch of IP addresses from a suit without apparent reason; these appear to be people who have settled. In his *Future Blue v. Does 1-300* lawsuit, for instance, Steele last week withdrew his claims against 15 IP addresses. If each one settled at $2,900 apiece, that's $43,500—not King Midas money, but hardly chump change, either.

Shortened  URL  -  http://arst.ch/p3a