1

2

3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5    HARD DRIVE PRODUCTIONS, INC.,              Case No.  C-11-01566 JCS

6              Plaintiff,
                                                **ORDER GRANTING DOE 24.5.180.56'S**
7         v.                                    **MOTION TO QUASH [Docket Nos. 13, 19,**
                                                **20, 21]**
8    DOES 1-188,
                   Defendants.
9    _____/

10

11   **I.     INTRODUCTION**

12         On June 21, 2011, Defendant John Doe at IP address 24.5.180.56 ("Doe 24.5.180.56") filed a

13   Motion to Quash this Court's Order Granting Hard Drive Production's Application for Leave to

14   Take Discovery Prior to Rule 26(f) Conference with Extended Joinder Discussion. Docket No. 19

15   (hereinafter, "June 21 Mot. to Quash").  The Defendant's Motion is GRANTED.  Further, for the

16   reasons stated in this order, the Court also GRANTS the other motions to quash pending in this

17   action that is, Docket Numbers 13, 20 and 21. For the reasons stated, the Court also quashes all

18   subpoenas seeking information regarding all defendants except Doe at IP address 173.55.54.77 (the

19   "remaining Doe Defendant"), and severs and dismisses without prejudice all claims against all Does

20   except the remaining Doe Defendant.

21   **II.    BACKGROUND**

22         **A.     Complaint**

23         Plaintiff filed this copyright infringement suit on March 31, 2011 against 188 separate Doe

24   Defendants. Docket. No. 1 ("Complaint"). In the Complaint, Plaintiff alleges that Doe Defendants

25   illegally reproduced and distributed Plaintiff's copyrighted video "Amateur Allure – Erin" ("the

26   Work"), thereby violating the United States Copyright Act, 17 U.S.C. §§ 101-1332. Complaint at

27   ¶¶ 7, 25-31.  Plaintiff alleges that it used geolocation technology to trace the Internet Protocol ("IP")

28   addresses of each Doe Defendant, thereby establishing that all Doe Defendants either reside or have

**United States District Court**
For the Northern District of California

committed copyright infringement in the State of California. *Id.* at ¶ 3. According to Plaintiff, all Doe Defendants participated in a "peer-to-peer" ("P2P") network in which the Defendants exchanged the Work using an internet file sharing method known as BitTorrent (hereinafter, "BitTorrent protocol" or "BitTorrent technology"), thereby taking part in a civil conspiracy to commit copyright infringement. *Id.* at ¶ 32-39. Plaintiff explains that

> . . . the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

*Id.* at ¶ 11. According to Plaintiff, "peers" are "individual downloaders or distributors of a particular file." *Id.* at ¶ 12. A "swarm" is a group of "peers" involved in downloading or distributing a particular file. *Id.* A "tracker" is a server which stores a list of "peers" in a "swarm." *Id.* Plaintiff states that each "swarm" is "unique to a particular file." *Id.* Plaintiff explains that the BitTorrent protocol functions as follows:

> First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

*Id.* at ¶ 13.

> Plaintiff alleges that joinder of the Doe Defendants is proper in the present case because:

> [t]he nature of the BitTorrent distribution protocol necessitates a concerted action by many people in order to disseminate files, such as Plaintiff's Work . . . [and] [t]he Doe Defendants are properly joined even if they were not engaged in a contemporaneous swarm because they have contributed to the chain of data distribution due to their prior involvement in like swarms.

*Id.* at ¶ 5. Plaintiff states that it knows Doe Defendants only by their IP addresses, which were identified by Plaintiff's agents "observ[ing] unlawful reproduction and distribution occurring among IP addresses listed on Exhibit A . . . via the BitTorrent Internet protocol." *Id.* at ¶ 8. Exhibit A to the

2

1    Complaint lists the IP addresses of the Doe Defendants, as well as the date and time in which the

2    Does at these IP addresses allegedly engaged in acts of infringement.

3         On March 31, 2011, Plaintiff initiated this lawsuit by filing a Complaint in which it asserted

4    a federal claim for infringement of the Copyright Act and a state common law claim for civil

5    conspiracy, based on the theory that the Doe Defendants conspired to commit copyright

6    infringement. *Id.* at ¶¶ 30-31, 39. Plaintiffs seek an award for both injunctive and monetary relief.

7    *Id.*

8         **B.    Plaintiff's Motion For Leave to Take Early Discovery**

9         Because Plaintiff knew the Doe Defendants only by their IP addresses, Plaintiff sought leave

10   to take early discovery in order to subpoena the Internet Service Providers ("ISP") of the IP

11   addresses associated with each of the 188 Doe Defendants to obtain the names, current and

12   permanent addresses, telephone numbers, email addressees, and Media Access Control addresses

13   ("MAC addresses") of the Doe Defendants. Plaintiff's *Ex Parte* Application for Leave to Take

14   Expedited Discovery with Expanded Joinder Discussion, Docket No. 10 at 3. ("Application").

15        In support of the Application, Plaintiff submitted the declaration of Peter Hansmeier, a

16   technician for Media Copyright Group, LLC ("MCG"), explaining how Plaintiff had identified the

17   IP addresses of Doe Defendants. Application, Ex. A, (Declaration of Peter Hansmeier in Support of

18   *Ex Parte* Application for Leave to Take Expedited Discovery ("Hansmeier Decl.")) at ¶¶ 12-20.

19   Hansmeier stated that he used a "tracker" to locate a "swarm" associated with the copyrighted Work,

20   and was subsequently able to use software to collect data, including IP addresses, of each "peer"

21   within the "swarm." *Id.* at ¶¶ 14-15. Although Plaintiff was able to identify the IP addresses of Doe

22   Defendants, it was not able to capture any other identifying information. *Id.* at ¶ 15. Hansmeier

23   stated that only the ISPs can access the Doe Defendants' names and addresses. *Id.* at ¶ 21.

24   Hansmeier further stated that "without expedited discovery . . . Plaintiff will have no means of

25   serving [Doe] Defendants with the complaint and summons . . . and no means to protect its creative

26   works from ongoing infringement." *Id.* Plaintiff urged that expedited discovery was of critical

27   importance because ISPs vary in the period of time that they preserve identifying information of

28   users of specific IP addresses. *Id.* at ¶ 22; Application at 5.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

**C.      Order Granting Leave to Take Early Discovery**

On May 6, 2011, the Court granted Plaintiff's request for leave to take discovery prior to the Rule 26(f) Conference, authorizing Plaintiff to serve Rule 45 subpoenas on the ISPs named in Exhibit A of the Complaint. Order Granting Plaintiff's Application for Leave to Take Discovery Prior to Rule 26(f) Conference with Extended Joinder Discussion, Docket No. 12 ("Order"). The subpoenas required the ISPs to notify subscribers of the IP addresses whose information was to be released so that the subscribers would have an opportunity to file objections or motions to quash with the Court. *Id.*

**D.      The Motion to Quash**

On June 21, 2011, Doe 24.5.180.56 filed a Motion to Quash the subpoena, asking the Court to prohibit the ISP from releasing Doe 24.5.180.56's name, correct (and permanent) address, telephone number, e-mail address, and Media Access Control address pursuant to the subpoena. June 21 Mot. to Quash.  Doe 24.5.180.56 claims that the subpoena for this information should be quashed and the claims asserted against him dismissed because joinder of the Doe Defendants is improper. *Id.* at ¶ 1. Doe 24.5.180.56 further asserts that the June 21 Motion to Quash should be granted on the basis of the unreliability of IP and MAC address tracing, and the difficulty of determining who is actually using an IP address in light of the fact that some home networks are not secure and that even within the household, and it is impossible to determine which approved user is responsible for a particular download. *Id.* at ¶¶ 2-5. Doe 24.5.180.56 also questions Plaintiff's ability to sue for copyright infringement because Plaintiff has not provided a copyright registration number or official document from the United States Copyright Office. *Id.* at ¶ 6.

With respect to the question of joinder of the Doe Defendants, Doe 24.5.180.56 asserts that the claims against him (as well as those asserted against the other Does) qualify as a unique case because each Doe has a separate network configuration, hardware and ISP, requiring individual investigation and giving rise to different defenses. *Id.* at ¶ 1. Therefore, he asserts, joinder is improper. Doe 24.5.180.56 also makes several arguments addressing the unreliability of the technology used to identify the individuals responsible for the alleged copyright infringement. *Id.* at ¶ 2-5. Doe 24.5.180.56 first argues that the Court should grant the motion to quash and dismiss the

1    claims against him because there exist "software solutions that allow users to 'spoof' or impersonate

2    false IP addresses." *Id.* at ¶ 2. Doe 24.5.180.56 similarly argues that MAC address tracing is

3    unreliable because ISPs are unable to detect users' MAC addresses, most ISPs do not store MAC

4    address data, and there are ways to fake MAC addresses. *Id.* at ¶ 3. Doe 24.5.180.56 asserts that

5    because MAC address tracing is unreliable, Plaintiff will be unable to verify who downloaded the

6    copyrighted material and where the copyrighted material was downloaded. *Id.*

7        Doe 24.5.180.56 cites several cases in support of his Motion to Quash. First, Doe

8    24.5.180.56 cites *VPR Internationale v. Does 1-1017*, in which the Central District of Illinois denied

9    a motion to certify interlocutory review of the court's denial of plaintiff's motion for expedited

10   discovery. *Id.* at ¶ 7(A). The plaintiff in *VPR Internationale* sought early discovery to subpoena the

11   identifying information of the subscribers of IP addresses who allegedly infringed upon the

12   plaintiff's copyright of a motion picture. *See VPR Internationale,* Case No.11-2068 (C.D. Ill., filed

13   Apr. 29, 2011).  The court denied the request for early discovery and later denied the plaintiff's

14   motion for interlocutory review because the "court will not be used to advance a 'fishing expedition

15   by means of a perversion of the purpose and intent' of class action." *Id.* at 3. Second, Doe

16   24.5.180.56 cites *Patrick Collins v. Does 1-1219*, 2010 WL 5422569 (N.D. Cal. Dec. 28, 2010), and

17   *On the Cheap v. Does 1-5011*, as examples of cases in which the court granted motions to quash.

18   June 21 Mot. to Quash at ¶ 7(B). Third, Doe 24.5.180.56 cites *BMG Music v. Does 1-203*, 2004 WL

19   953888 (E.D. Pa. Apr. 2, 2004), as an example of a case involving similar allegations that was

20   dismissed because of improper joinder. June 21 Mot. to Quash at ¶ 7(C). Fourth, Doe 24.5.180.56

21   cites *Millenium TGA, Inc. v. Does 1-800*, Case No. 10-05604 (N.D. Ill., filed Sept. 2, 2010), as an

22   example of a case in which the court found improper joinder and improper venue where unidentified

23   Doe defendants were sued for copyright infringement. June 21 Mot. to Quash  ¶ 7(F). Doe

24   24.5.180.56 also cites *First Time Videos, LLC v. Does 1-500*, *Id.* at ¶ 7(D), a list of orders from West

25   Virginia, *Id.* at ¶ 7(E), and a list of cases from various districts, *Id.* at ¶ 7(G), without providing legal

26   citations or explanations of the relevance of the cases to the present Motion.

27

28

**E.      Opposition to the Motion to Quash**

On June 30, 2011, Plaintiff filed a  Response in Opposition to Movant's Motion to Quash

Subpoena. Docket No. 24 ("Opposition"). In the Opposition, Plaintiff argues that Doe 24.5.180.56's

Motion to Quash should be denied because: (1) the argument regarding misjoinder is improper at

this stage of the case; (2) a subpoena may not be quashed based on arguments that address the merits

of the case; and (3) Doe 24.5.180.56's copyright registration argument is frivolous. Plaintiff further

asserts that Doe 24.5.180.56's reliance on unrelated authority is not a basis for quashing the

subpoenas. Opposition at 1-2.

First, Plaintiff argues that Doe 24.5.180.56's challenge to joinder is premature because

Plaintiff's allegations that the "Doe Defendants have infringed Plaintiff's copyrighted Work . . .

through the same file-sharing protocol . . . [has] been held sufficient to sustain joinder while

discovery of Doe Defendants' identities is underway." *Id.* at 2 (citing *MCGIP, LLC v. Does 1-18*,

2011 WL 218160 at *4 (N.D. Cal. June 2, 2011)). Plaintiff argues that Doe 24.5.180.56 can only

raise his misjoinder claim after the Doe Defendants have been named and served. *Id.* at 3.

Second, Plaintiff asserts that Doe 24.5.180.56's arguments based on the reliability of IP

tracing technology go to the merits of the case and thus are not relevant to "whether [a] subpoena is

valid and enforceable." *Id.* (citing *Voltage Pictures, LLC v. Does 1-5,000*, 2011 WL 1807438 at *4

(D.D.C. May 12, 2011)).  Plaintiff argues that any defenses to the lawsuit may be raised only after

Doe 24.5.180.56 has been identified and named a party in the lawsuit. *Id.* at 4.

Third, Plaintiff asserts that Doe 24.5.180.56's copyright registration argument is frivolous

because Plaintiff has alleged that it has a currently pending copyright application for the Work in the

United States Copyright Office, *Id.* (citing Complaint at ¶ 20), and the Ninth Circuit has found that

the United States Copyright Office's receipt of a complete copyright application satisfies the

registration requirement of a copyright infringement action. *Id.* at 4 (citing *Cosmetic Ideas, Inc. v.

IAC/Interactivecorp*, 606 F.3d 612, 621 (9th Cir. 2010)).

**F.      Voluntary Dismissal of Doe Defendants 1-5**

On August 10, 2011, Plaintiff voluntarily dismissed Does 1-5 from the action pursuant to

Rule 41(a)(1) of the Federal Rules of Civil Procedure.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   **III.    MAGISTRATE JURISDICTION UNDER 28 U.S.C. § 636**

2   Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge has jurisdiction to hear and decide non-

3   dispositive matters without the consent of the parties. A motion to quash is normally considered a

4   non-dispositive matter, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010), and

5   therefore, the undersigned has jurisdiction to rule on Doe 24.5.180.56's motion to the extent he

6   seeks to quash Plaintiff's subpoena.  In addition, a magistrate judge has jurisdiction to consider the

7   question of whether of joinder of unserved defendants is proper, including whether unserved

8   defendants should be severed and dismissed from the action, because defendants who have not been

9   served are not considered "parties" under 28 U.S.C. § 636(c).  *See Neals v. Norwood*, 59 F.3d 530,

10  532 (5th Cir. 1995) (holding that magistrate judge had jurisdiction to dismiss prison inmate's action

11  under 42 U.S.C. § 1983 as frivolous without consent of defendants because defendants had not been

12  served yet and therefore were not parties); *see also United States v. Real Property*, 135 F.3d 1212,

13  1217 (9th Cir. 1998) (holding that magistrate judge had jurisdiction to enter default judgment in an

14  in rem forfeiture action even though property owner had not consented to it because 28 U.S.C. §

15  636(c)(1) only requires the consent of the parties and the property owner, having failed to comply

16  with the applicable filing requirements, was not a party).  Here, Plaintiff has consented to magistrate

17  jurisdiction and the Doe Defendants have not yet been served. Therefore, the Court finds that it has

18  jurisdiction under 28 U.S.C. § 636(c) to decide the issues raised in the instant motion.

19  **IV.    ANALYSIS**

20      **A.    Legal Standard**

21          **1.    Authority to Quash Subpoenas**

22  Under Rule 45(c)(3), a court must modify or quash a subpoena that, *inter alia*, "requires

23  disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a

24  person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). A court may modify or quash a subpoena that,

25  *inter alia*, requires disclosing confidential information. Fed. R. Civ. P. 45(c)(3)(B).

26  Furthermore, Rule 26(c)(1) provides:

27  A party or any person from whom discovery is sought may move for a protective order in the
    court where the action is pending . . . The court may, for good cause, issue an order to protect

28

**United States District Court**
For the Northern District of California

1  a party or person from annoyance, embarrassment, oppression, or undue burden or expense,
2  including . . . forbidding the disclosure or discovery.

3  Fed. R. Civ. P. 26(c)(1). The court also must:

4  limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil
   Procedure] or by local rule if it determines that . . . the burden or expense of the proposed
5  discovery outweighs its likely benefit, considering the needs of the case, the amount in
   controversy, the parties' resources, the importance of the issues at stake in the action, and the
6  importance of discovery in resolving the issues.

7  Fed. R. Civ. P. 26(b)(2)(C)(iii).

8              **2.      Permissive Joinder**

9         Under Rule 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is

10 asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

11 transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact

12 common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) is

13 designed to promote judicial economy and trial convenience. *See Mosley v. Gen. Motors*, 497 F.2d

14 1330, 1332-33 (8th Cir. 1974). The Supreme Court has found that "[u]nder the [Federal] Rules [of

15 Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent

16 with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United*

17 *Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724.

18        Rule 21 further provides that "[m]isjoinder of parties is not a ground for dismissing an

19 action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The

20 court may also sever any claim against a party." Fed. R. Civ. P. 21.

21             **3.      Discretionary Severance**

22        The Ninth Circuit has found that "even once [the Rule 20(a)] requirements are met, a district

23 court must examine whether permissive joinder would 'comport with the principles of fundamental

24 fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Company*, 232 F.3d

25 1271, 1296 (9th Cir. 2000) (citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d

26 1371, 1375 (9th Cir. 1980) (finding that the district court did not abuse its discretion when it severed

27 certain plaintiff's claims without finding improper joinder)). Under Rule 20(b), the district court

28 may sever claims or parties in order to avoid prejudice. Fed. R. Civ. P. 20(b). Courts have also

United States District Court

For the Northern District of California

1    exercised their discretion to sever where "[i]nstead of making the resolution of [the] case more

2    efficient . . . joinder would instead confuse and complicate the issues for all parties involved." *See*,

3    *e.g.*, *Wynn v. National Broadcasting Company*, 234 F. Supp. 2d 1067, 1088 (C.D. Cal. 2002)

4    (finding that even where Rule 20 requirements for joinder are satisfied, the Court may exercise its

5    discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial inefficiency,

6    and (2) to prevent unfair prejudice to the [defendants]") (citing *Coleman*, 232 F.3d at 1296).

7                    **4.        Motions Brought by Pro Se Litigants**

8           The Supreme Court has found that a federal court should be liberal in its construction of a

9    *pro se* litigant's motion, and may even "ignore the legal label that a pro se litigant attaches to a

10   motion and recharacterize the motion in order to place it within a different legal category," so long

11   as the *pro se* litigant is warned of the recharacterization. *See Castro v. United States*, 540 U.S. 375,

12   381-84 (collecting cases).

13                  **B.        Whether Joinder of Doe Defendants Should be Permitted**

14          Although Doe 24.5.180.56 has not brought a motion to sever or a motion to dismiss, in order

15   to rule on Doe 24.5.180.56's Motion to Quash, the Court must address the questions of whether Rule

16   20(a)(2) joinder of Doe Defendants in this action is proper under Rule 20(a) and further, whether

17   there are grounds for exercising the discretionary power to sever under Rule 20(b).

18                  **1.        Joinder Under Rule 20(a)**

19          With the advent of BitTorrent technology, courts have grappled with the question of whether

20   joinder of Doe defendants who engage in acts of infringement using BitTorrent technology should

21   be treated in the same way as joinder of defendants in connection with earlier P2P technologies. A

22   growing number of decisions by district courts offer guidance on this question, though they have

23   reached different conclusions. Although some courts have distinguished BitTorrent from prior P2P

24   technologies and on that basis have permitted joinder of multiple Does who are a part of single

25   "swarm," at least at the early stages of the case, several judges in the Northern District of California

26   have recently found that use of BitTorrent, like earlier P2P technologies, is not sufficient to satisfy

27   the requirements of Rule 20(a), *even if* the Doe defendants are part of a single swarm.  For the

28

United States District Court

For the Northern District of California

reasons stated below, the Court finds that the latter approach is more persuasive.  Therefore, the Court concludes that permissive joinder of the Doe Defendants is improper under Rule 20(a).

### a. P2P Case Law Prior to BitTorrent

In the case law addressing alleged copyright infringement using P2P technologies that pre-date BitTorrent technology, numerous courts have found that the alleged use of the same P2P network by a group of Doe defendants to commit copyright infringement is insufficient to sustain permissive joinder. *See IO Group, Inc. v. Does 1-19*, 2010 WL 5071605, at *3 (N.D. Cal. Dec. 7, 2010) (collecting cases). A review of some of these cases is instructive.

In *Laface Records, LLC. v. Does 1-38*, the plaintiffs owned copyrights in various sound recordings and sued 38 Doe defendants on the basis that they had illegally downloaded and distributed copyrighted material from the Internet "using an online media distribution network, a peer-to-peer network." 2008 WL 544992, at *1 (E.D.N.C. Feb. 27, 2008).  A magistrate judge permitted earlier discovery permitting the plaintiffs to serve Rule 45 subpoenas on the ISPs of the Doe defendants and numerous Does brought motions asking the court to quash the plaintiffs' subpoenas and vacate the early discovery order on the basis that they were improperly joined.  *Id*. at *2.  The district court found that the Doe defendants were improperly joined under Rule 20(a)(2) because the copyright infringement claims did not arise out of the same transaction, occurrence or series of transactions or occurrences, rejecting the plaintiffs' contention that the copyright infringement arose out of the same transaction, occurrence, or series of transactions or occurrences because "each defendant used the same ISP as well as some of the same P2P networks." *Id.*  Rather, the court concluded that "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *Id.*  The court therefore severed all of the Doe defendants but one and deemed the subpoenas served on the severed Doe defendants' ISP to be "no longer valid." *Id.* at *3.  The court did not immediately dismiss the severed Doe defendants, allowing plaintiffs twenty days to file new, separate actions against each of the severed Doe defendants. *Id.*  However, if the plaintiff did not timely file new, separate actions, the court ordered the claims against each of the severed Doe defendants to be dismissed. *Id.*

United States District Court

For the Northern District of California

Similarly, in *Interscope Records* the court found joinder to be improper under Rule 20(a)(2) even though Doe defendants were alleged to have disseminated plaintiffs' copyrighted works through the same P2P network. 2004 U.S. Dist. LEXIS 27782, at *2, *19 (M.D. Fl. Apr. 1, 2004). The court disagreed with the plaintiffs' assertion that joinder was proper because "the [d]efendants 'have participated in a common scheme or pattern of behavior,' via the downloading and dissemination of [p]laintiffs' sound recordings using the same network, 'without which no [d]efendant would have been able to commit much of the infringing activity.'" *Id.* at *10. Instead, the court found "the same transaction requirement [of Rule 20(a)]. . . is not satisfied by the fact that the [d]efendants accessed the songs through [the same P2P network]," and the court recommended that all claims "except those by the first plaintiff against the first defendant be severed . . . [and that] the other plaintiffs and [claims] against other defendants be dismissed." *Id.* at *19, *16.

In *Elektra Entertainment Group, Inc. v. Does 1-9*, plaintiff alleged in its complaint that Doe defendants committed copyright infringement by disseminating plaintiff's copyrighted work via a P2P network. *Elektra Entertainment Group, Inc. v. Does 1-9*, 2004 WL 2095581, at *1 (S.D.N.Y. Sept. 8, 2004). The plaintiff identified the ISP addresses of the Doe defendants, and then filed an *ex parte* motion to take expedited discovery. *Id.*  The court initially granted the *ex parte* motion to take early discovery to identify all the Doe defendants. *Id.*  However, Doe defendant number 7 moved to quash the subpoena served upon his ISP, and to sever himself from the action. *Id.*  The court denied the motion to quash and the motion to dismiss, but granted Doe defendant number 7's motion to sever himself from the action, finding that the mere use of the same P2P protocol was insufficient to establish that plaintiff's copyright infringement claims were logically related for the purposes of a Rule 20(a)(2) joinder. *Id.* at *6-7.  The court further ordered that plaintiff file a separate action against Doe number 7. *Id.* at *8.

In *Fonovisa, Inc. v. Does 1-9*, the court found Rule 20(a)(2) joinder to be improper where sixteen plaintiffs alleged that nine defendants had committed copyright infringement of more than one copyrighted work. 2008 WL 919701 (W.D. Pa. Apr. 3, 2008).  Initially, the *Fonovisa* court granted plaintiff's *ex parte* application for leave to take early discovery on the basis that the defendants were alleged to have committed copyright infringement using the same P2P network. *Id.*

**United States District Court**
For the Northern District of California

Then, after a Doe defendant filed a motion to dismiss (which the court construed as a motion for severance), the court found joinder to be improper under Rule 20(a)(2) because, *inter alia*, "plaintiffs have failed to show that one or more of the [d]efendants has actually downloaded songs from another [d]efendant, which could conceivably link the [d]efendants or show they acted in concert." *Id.* at *1, *5.  The court held that "given the different factual contexts of the alleged infringement for each [d]efendant and the absence of any evidence showing joint action by [d]efendants, other than their use of the same peer-to-peer network to access the copyright recordings and the same ISP . . . [p]laintiffs have failed to satisfy the requirements for permissive joinder under Rule 20(a)." *Id.* at *6.  Finding joinder to be improper under Rule 20(a)(2), the court granted the Doe defendant's motion for severance, severing "all claims except those raised by [p]laintiffs against [d]oe #3," and dismissing without prejudice "[p]laintiff's claims against [d]efendants [d]oes #1-2 and 4-9." *Id.* at 11.

### b.      Application of the P2P Case Law Framework to BitTorrent Technology

With the advent of the BitTorrent technology, some courts have accepted the assertion of plaintiff that Doe defendants who have participated in the same swarm to download a copyrighted work may properly be joined under Rule 20(a), notwithstanding the authority that reaches a contrary conclusion with respect to earlier P2P technologies (discussed above). *See*, *e.g.*, *MCGIP, LLC. v. Does 1-18*, 2011 WL 2181620 (N.D. Cal. June 2, 2011); *Voltage*, 2011 WL 1807438 at *5 (D.D.C. May 12, 2011); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. Mar. 22, 2011)(D.D.C. Mar. 22, 2011) (collecting cases).

In *MCGIP*, for example, the court denied a Doe defendant's motion to quash a subpoena issued by the plaintiff to the Doe defendants' ISPs seeking to identify the Doe defendants in the case. *MCGIP*, 2011 WL 2181620, at *1  (N.D. Cal. June 2, 2011). The court rejected the Doe defendant's argument that the motion to quash should be granted on the basis of improper joinder, reasoning that while joinder might be found improper at a later stage of the case, when the identities of the Does had been determined, the allegation "that the Doe [d]efendants have infringed [p]laintiff's copyright through 'the same file sharing software program [*i.e.*, BitTorrent] that operates

1    through simultaneous and sequential computer connections and data transfers among the users'" was

2    sufficient to satisfy Rule 20(a) at the pleading stage. *Id.*

3    Similarly, in *Voltage*, the court found joinder under Rule 20(a)(2) was proper where the Doe

4    defendants allegedly downloaded and distributed plaintiff's copyrighted movie using BitTorrent

5    technology. *See Voltage*, 2011 WL 1807438 at *5 (D.D.C. May 12, 2011). After the court granted

6    the plaintiff leave to subpoena the ISPs in order to identify the putative defendants, 119 putative

7    defendants filed motions to quash the plaintiff's subpoenas. *Id.* at *1-2.  Seven of the putative

8    defendants argued that they should be dismissed for improper joinder. *Id.* at *4. The court, however,

9    found joinder to be proper. *Id.*  In permitting Rule 20(a)(2) joinder, the court relied on the standard

10   set forth in *United Mine Workers*, where the Court held that "[u]nder the [Federal] Rules [of Civil

11   Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with

12   fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine

13   Workers of Am.*, 383 U.S. at 724. The court also cited Rule 20(a)(2)(A), stating that it "essentially

14   requires claims asserted against joined parties to be 'logically related.'" *Voltage*, 2011 WL 1807438,

15   at *5 (citing *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004)).  The *Voltage* court

16   stated:

17       the plaintiff allege[d] that the putative defendants used the BitTorrent file-sharing protocol to
         distribute illegally the plaintiff's motion picture . . . This file-sharing protocol 'makes every
18       downloader also an uploader of the illegally transferred file(s).  This means that every . . .
         user who has a copy of the infringing copyrighted material on a torrent network must
19       necessarily also be a source of download for that infringing file.'

20   *Id.* (quoting plaintiff's complaint).  The court therefore permitted the Rule 20(a)(2) joinder because

21       [b]ased on [plaintiff's allegations], the plaintiff's claims against the putative defendants are
         logically related at this stage in the litigation. . . . [and] at this procedural juncture the
22       plaintiff has sufficiently alleged that its claims against the putative defendants potentially
         stem from the same transaction or occurrence, and are logically related.
23   *Id.*

24   Finally, in *Call of the Wild Movie*, after granting the plaintiffs' motion for expedited

25   discovery to obtain identifying information about the Doe defendants in three pending copyright

26   infringement cases, the court denied the ISPs' motion to quash or modify the subpoena. *Call of the

27   Wild Movie,*770 F. Supp. 2d 332, 338 (D.D.C. Mar. 22, 2011).  The ISPs and amici urged the court

28   to quash the subpoenas based, in part, upon improper joinder, arguing "that engaging in 'separate but

United States District Court
For the Northern District of California

similar behavior by individuals allegedly using the Internet to commit copyright infringement' does

not satisfy Rule(a)(2)(A)'s requirement that the claim asserted against the joined defendants arise

out of the same transaction, occurrence, or series of transactions or occurrences.'" *Id.* at 342-43.

However the court rejected this argument.  Like the *Voltage* court, the court in *Call of the Wild*

*Movies* found that Rule 20(a)(2)(A) "essentially requires claims asserted against joined parties to be

'logically related' . . . [and that] [t]his is a flexible test and courts seek the 'broadest possible scope

of action.'" *Id.* at 342 (citing *Disparte*, 223 F.R.D. at 10; *Lane v. Tschetter*, 2007 WL 2007493, at *7

(D.D.C. July 10, 2007)).  The court then found plaintiffs' allegation

> that the BitTorrent file-sharing protocol 'makes every downloader also an uploader of the
> illegally transferred file(s)'. . . [and] that the 'nature of a BitTorrent protocol [is that] any
> seed peer that has downloaded a file prior to the time a subsequent peer downloads the same
> file is automatically a source for the subsequent peer so long as that first seed peer is online
> at the time the subsequent peer downloads a file'

was sufficient to establish that "the plaintiffs' claims against the defendants are logically related."

*Call of the Wild*, 770 F. Supp. 2d at 343 (quoting complaint).  The court further found the plaintiffs

met the requirement that the claims against the putative defendants contain a common question of

law or fact, and that joinder would not prejudice the parties or result in needless delay.  *Id.* While the

court recognized "that each putative defendant may later present different factual and substantive

legal defenses . . . that does not defeat, at this stage of the proceedings, the commonality in facts and

legal claims that support joinder under Rule 20(a)(2)(B)." *Id.* at 344.

Several judges in the Northern District of California, however, have rejected the approach

discussed above, finding that use of BitTorrent technology, like earlier P2P technologies, does not

satisfy the requirements for permissive joinder.  For example, in *Diabolic Video Productions*, Judge

Grewal found Rule 20(a)(2) joinder improper where plaintiff alleged that 2,099 different defendants

acted in concert to reproduce plaintiff's copyrighted film on forty-nine different days using the

BitTorrent protocol. *Diabolic Video Productions*, 2011 WL 3100404, at *1 (N.D. Cal. May 31,

2011). There, the plaintiff attempted to join all Doe defendants in one action, seeking expedited

discovery "to serve subpoenas on several enumerated ISPs to obtain the true identities of Doe

[d]efendants for purpose of service in accordance with Fed.R.Civ.P. 4." *Id.*  As a threshold matter,

the court rejected the plaintiff's argument that the single transaction or series of closely-related

United States District Court

For the Northern District of California

1    transactions requirement under Rule 20(a)(2) was satisfied merely because all defendants joined a

2    common "swarm" to upload or download the copyrighted film. *Id.* at *3. Instead, the court

3    followed the general rule established by courts addressing alleged copyright infringement through

4    the use of earlier P2P technologies: "the mere allegation that defendants have used the same peer-to-

5    peer network to infringe a copyrighted work is insufficient to meet the standards of joinder set forth

6    in Rule 20." *Id.* The court rejected the plaintiff's contention that Rule 20(a)(2) joinder was proper

7    because the plaintiff alleged that all Doe defendants "acted in cooperation with one another 'by

8    agreeing to provide, and actually providing, on a P2P network, an infringing reproduction of at least

9    substantial portions of Diabolic's copyrighted [m]otion [p]icture, in anticipation of the other

10   [d]efendants doing likewise with respect to that work and/or other works.'" *Id.* Therefore, finding

11   the Rule 20(a)(2) joinder to be impermissible, the court severed all Does but Doe 1 and reassigned

12   the severed Does to an Article III judge with the recommendation the claims against them be

13   dismissed. *Id.* at *5.

14       In *Pacific Century International*, Judge Ryu reached a similar result. *Pacific Century*

15   *International*, 2011 WL 2690142 (N.D. Cal. July 8, 2011). There, the plaintiff sought expedited

16   discovery to serve subpoenas on the ISPs of 101 Doe defendants who were alleged to have engaged

17   in a civil conspiracy in order to commit copyright infringement of plaintiff's copyrighted work using

18   BitTorrent technology. *Id.* The court found, as a threshold matter, that Rule 20(a)(2) joinder was

19   improper because "the only commonality between copyright infringers of the same work is that each

20   'commit[ted] the exact same violation of the law in exactly the same way.'" *Pacific Century*

21   *International*, 2011 WL 2690142, at *4 (N.D. Cal. July 8, 2011) (citing *LaFace Records*, 2008 WL

22   544992, at *2 (E.D.N.C. Feb. 27, 2008)). Furthermore, in addressing the plaintiff's civil conspiracy

23   claim, the court found that:

24           [a]lthough [p]laintiff explains the protocol and how it differs from its predecessor P2P
             programs, and specifically claims that [d]efendants have engaged in a civil conspiracy . . .
25           [p]laintiff still has failed to demonstrate that it has 'any right to relief against [Defendants] . .
             . arising out of the same transaction, occurrence, or series of transactions or occurrences.
26

27   *Id.* (citing Fed.R.Civ.P. 20(a)(2)(A)). Accordingly, the court denied the plaintiff's request for

28   expedited discovery as to all Doe defendants, granting instead expedited discovery on only Doe

1   defendant 1, while severing and dismissing the remaining Does without prejudice for improper Rule

2   20(a)(2) joinder. *Id.* at *4.

3         In *Millennium TGA*, Judge Conti found Rule 20(a) joinder to be improper where the plaintiff

4   alleged that twenty-one Doe defendants used BitTorrent to unlawfully reproduce and distribute

5   plaintiff's copyrighted work, and sought expedited discovery on eight ISPs "to compel them to

6   provide the name, address, telephone number, e-mail address, and media access control address of

7   each [d]oe [d]efendant." *Millennium TGA*, 2011 WL 1812786, at *1 (N.D. Cal. May 12, 2011). The

8   court denied the plaintiff's application to take early third-party discovery because "[p]laintiff has

9   failed to establish that either its civil conspiracy claim or its copyright claim could survive a motion

10  to dismiss." *Id.* at *3. In ruling that the plaintiff's claim could not survive a motion to dismiss, the

11  court found Rule 20(a)(2) joinder of the Doe defendants impermissible because "the Doe

12  [d]efendants' individual and separate alleged reproductions of Plaintiff's Work – which occurred

13  over the span of twenty days – do not satisfy [the Rule 20(a)(2)] requirement." *Millennium TGA*,

14  2011 WL 1812786, at *3 (N.D. Cal. May 12, 2011).

15        Finally, in a recent order addressing a request for expedited discovery in the context of a

16  copyright infringement action based on alleged use of BitTorrent by numerous Doe defendants,

17  Judge Grewal revisited the question of whether BitTorrent technology requires that it be treated

18  differently from earlier P2P technologies for the purposes of joinder. *See Boy Racer v. John Does 2-*

19  *52*. Case No. 11-2834, N.D. Cal., Docket No. 12. After receiving supplemental briefing on the

20  question from the plaintiffs, he concluded that it should not, reasoning as follows:

21        . . . to distinguish the technical architecture of BitTorrent from those file-sharing protocols
          which other courts have found failed to justify joinder, Boy Racer explains that users of the
22        BitTorrent protocol have a higher degree of interactivity and engage in "deep and sustained
          collaboration with their peers," as follows:
23
24              First, the protocol breaks a single large file into a series of smaller distributable
                pieces. Then, an initial file-provider (the "seeder") intentionally elects to distribute
                the pieces to third parties. This is called "seeding." Other users ("peers") on the
25              network, download a small "torrent" file that contains directions on where to find the
                seeder as well as an index of the pieces. The torrent file is loaded into BitTorrent
26              software, and the software follows the directions on where to find the seeder as well
                as an index of the pieces. The torrent file is loaded into BitTorrent software, and the
27              software follows the directions in the torrent file to connect to the seeder. When a
                piece download is complete, the peers automatically become seeders with respect to
28              the downloaded pieces. In other words, each peer in a swarm transforms from a pure

downloader (a "leecher" in BitTorrent vernacular) to a peer that is simultaneously downloading and distributing pieces of a file. By this mechanism, each peer collaborates with others in the swarm to complete the distribution of a file. A piece shared by the initial seeder or any later seeders will be distributed amongst the peers countless times over– even if the seeder leaves the swarm. Users can be connected to one another over the span of weeks simply via the initial download.

Boy Racer goes on to note:

The BitTorrent file distribution protocol leads to a rapid viral spreading of a file through willful peer users, all of whom are both intentionally uploading and downloading portions of the file simultaneously. As more peers intentionally join the swarm for the copyrighted works, the likelihood of a successful download increases. Due to the nature of the BitTorrent protocol, any peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible, and even a likely, source of the file for the subsequent peer. Indeed, a majority of the prominent adult content torrent-indexing websites mandate that users maintain a minimum upload/download ratio, which means that users who download a file via the BitTorrent protocol are highly likely to serve as seeders in order to assure that they meet ratio requirements. Essentially, because of the nature of the swarm downloads, every infringer is simultaneously illegally downloading and distributing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions around the country– although this lawsuit is isolated to peers who are believed to be located exclusively in California.

According to Boy Racer, this greater extent of "cooperation and concerted action" among BitTorrent users than among users of other protocols makes joinder proper here.

Even with the description of the BitTorrent technology provided by Mr. Hansmeier, the court remains unpersuaded that the peer-to-peer architecture of the BitTorrent technology justifies the joinder of otherwise unrelated defendants in a single action. First, the Hansmeier declaration argues at length about the "concerted activity" within a _given_ swarm. Presumably he does so in response to the concern highlighted by Judge Ryu in _different_ swarms have nothing in common other than downloading the same work, which as this court and others have noted is insufficient under our precedent. But the Hansmeier declaration itself offers overwhelming evidence that the IP addresses were in fact gathered from multiple swarms. Second, even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case. In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these addresses were ever assembled into a single swarm. As the court previously explained, under this court's precedent regarding other file sharing protocols, merely infringing the same copyrighted work over this period is not enough. Finally, nothing in the BitTorrent architecture changes the fact that each defendant also will likely have a different defense. As the district court in _BMG Music_ put it:

Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.

United States District Court

For the Northern District of California

1 | Docket No. 12 at 3-6.

2 |      Here, the Court finds the reasoning in *Boy Racer* and *Diabolic Video Productions*, *Pacific*

3 | *Century International*, and *Millennium TGA* persuasive.  Does 1-188 did not participate in the same

4 | transaction or occurrence, or the same series of transactions or occurrences.  Under the BitTorrent

5 | Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the

6 | downloading of each other's copies of the work at issue – or even participated in or contributed to

7 | the downloading by any of the Does 1-188.  Any "pieces" of the work copied or uploaded by any

8 | individual Doe may have gone to any other Doe *or to any of the potentially thousands who*

9 | *participated in a given swarm.*  The bare fact that a Doe clicked on a command to participate in the

10 | BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or

11 | thousands of individuals across the country or across the world.

12 |      Moreover, the court notes that the declaration submitted in this action, like the declaration in

13 | *Boy Racer*, appears to contradict the assertion that the Does named in this action are part of a single

14 | swarm.  *See* Hansmeier Decl., ¶ 13 ("[the first step in the infringer-identification process is to locate

15 | swarms where peers are distributing the copyrighted creative works.");¶ 14 ("I used all three

16 | methods to locate swarms associated with Plaintiff's exclusive license.").  Further, although

17 | Hansmeier states that he "collected data on the peers in the swarm, including what activities each

18 | peer was engaging in and other important such as the date and time that each Defendant was

19 | observed by the software as engaging in infringing activity," the exhibit attached to the complaint

20 | reflects that the activity of the different IP addresses occurred on different days and times over a

21 | two-week period.  *Id.* at ¶ 15.  Indeed, Plaintiff concedes that while the Doe Defendants may have

22 | participated in the same swarm, "they may not have been physically present in the swarm on the

23 | exact same day and time." Application at 18; Complaint, Ex. A.  As a result, the Court finds

24 | unpersuasive the allegation that the Does acted in concert.  Therefore, the Court concludes that

25 | joinder of the Doe Defendants in this action does not satisfy Rule 20(a).

26 |      **2.**    **Discretionary Severance**

27 |      Even if joinder of the Doe Defendants in this action met the requirements of Rule 20(a) of

28 | the Federal Rules of Civil Procedure, the Court finds it is appropriate to exercise its discretion to

United States District Court

For the Northern District of California

1  sever and dismiss all but one Doe Defendant to avoid causing prejudice and unfairness to

2  Defendants, and in the interest of justice. *See Wynn*, 234 F. Supp. 2d at 1088.

3  First, permitting joinder in this case would undermine Rule 20(a)'s purpose of promoting

4  judicial economy and trial convenience because it would result in a logistically unmanageable case.

5  *See Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 232-33 (M.D. Tenn) (holding permissive

6  joinder of 770 putative defendants would not promote judicial economy because the court's

7  courtroom could not accommodate all of the defendants and their attorneys, and therefore could not

8  hold case management conferences and could not try all of plaintiff's claims together). Second,

9  permitting joinder would force the Court to address the unique defenses that are likely to be

10 advanced by each individual Defendant, creating scores of mini-trials involving different evidence

11 and testimony. In this respect, the Court also notes that in Exhibit A to the Complaint there are listed

12 at least thirteen different internet service providers associated with Doe Defendants, which could

13 also give rise to different ISP-specific defenses, evidence, and testimony. *See* Complaint, Ex. A.

14 Finally, the Court finds that permissive joinder of the Doe Defendants does not comport with

15 the "notions of fundamental fairness," and that it will likely cause prejudice to the putative

16 defendants. *See Coleman*, 232 F.3d at 1296. The joinder would result in numerous hurdles that

17 would prejudice the defendants. For example, even though they may be separated by many miles

18 and have nothing in common other than the use of BitTorrent, each defendant must serve each other

19 with all pleadings – a significant burden when, as here, many of the defendants will be appearing

20 *pro se* and may not be e-filers. Each defendant would have the right to be at each other defendant's

21 deposition  – creating a thoroughly unmanageable situation.  The courtroom proceedings would be

22 unworkable – with each of the 188 Does having the opportunity to be present and address the court

23 at each case management conference or other event.  Finally, each defendant's defense would, in

24 effect, require a mini-trial.  These burdens completely defeat any supposed benefit from the joinder

25 of all Does in this case, and would substantially prejudice defendants and the administration of

26 justice.

27 Moreover, the Court notes that Plaintiff's allegation that all Doe Defendants meet the Rule

28 20(a) joinder requirements is speculative and conclusory.  For example, while Plaintiff asserts that

1  Doe Defendants conspired with each other to download the work, Plaintiff also asserts that "each

2  defendant is a *possible* source of Plaintiff's file, and *may* be responsible for distributing the file to the

3  other defendants." Application at 19 (emphasis added). Plaintiff also concedes the Doe Defendants

4  "may not have been physically present in the swarm on the exact same day and time." Application at

5  18; Complaint, Ex. A. In light of Plaintiff's uncertainty about the role of each particular Doe

6  Defendant and the relationship between the Doe Defendants, the Court finds it appropriate to

7  exercise its discretion to sever all of the Doe Defendants but one in the interest of fairness. The

8  Court rejects Plaintiff's assertion that severing the Doe Defendants would "practically prevent

9  copyright holder plaintiffs from being able to protect their material," as the Court's severance does

10 not preclude Plaintiff from filing individual copyright infringement actions against each Doe

11 Defendant. Application at 23.

12 **V.      CONCLUSION**

13         For the reasons stated above, the Court severs all Doe Defendants except Doe Defendant at

14 IP address 173.55.54.77 (the first Doe Defendant listed in Exhibit A to the Complaint that has not

15 been dismissed from the action). Because the Doe Defendant at IP address 24.5.180.56 has been

16 dismissed from the action, the subpoena against that Doe Defendant is no longer in effect.

17 Accordingly, the Motion to Quash is Granted on that basis. Moreover, because all severed Doe

18 Defendants have now been dismissed, all subpoenas seeking discovery regarding all Doe Defendants

19 except Doe 173.55.54.77 are ordered QUASHED. The claims against the severed Doe Defendants

20 are DISMISSED without prejudice to refiling in separate actions.

21         IT IS SO ORDERED.

22

23 Dated: August 23, 2011

24

25                                        _____

26                                        JOSEPH C. SPERO
                                          United States Magistrate Judge

27

28